STONE *v.* FROHLICH.

1. SALES—INSPECTION—REASONABLE TIME FOR REJECTION.
   The delay in inspecting and rejecting lumber bought on 60
   days' credit, beyond a reasonable time for examining and re-
   fusing the merchandise, was not excused merely because of
   inconvenience to defendant.

2. SAME.
   A delay of 28 days before inspecting, and of more than 60 days
   before notifying the shipper that the lumber was deficient in
   quality, was unreasonable, as a matter of law.

3. SAME—RECOUPMENT.
   Where defendant's testimony showed that the lumber was
   short in measure, and the court, after asking defendant how
   much shortage he claimed, deducted the total amount there-
   of at its highest value from plaintiff's claim, and directed a
   verdict for the remainder, defendant was not prejudiced.

Error to Wayne; Rohnert, J. Submitted November 17,
1911. (Docket No. 100.) Decided December 29, 1911.

Assumpsit in justice's court by Fred J. Stone against
Edward Frohlich for the purchase price of certain lum-
ber. The cause was removed to the circuit court by ap-
peal. Judgment for plaintiff on a verdict directed by the
court. Defendant brings error. Affirmed.

*Lucking, Emmons & Helfman,* for appellant.
*Fred H. Aldrich,* for appellee.

OSTRANDER, C. J. Defendant orally gave plaintiff an
order for a car load of lumber. The car was loaded and
shipped from some point in Kentucky, January 17, 1908.
The invoice went forward to defendant the same day.
The terms were 2 per cent., 10 days, or 60 days accept-
ance. The invoice shows a total of 11,835 feet. There
were two sizes of lumber, 5-4 and 4-4, and in the invoice
the quantity of each size is divided and billed under differ-
ent prices per thousand, as follows:

| | | | |
|---|---|---|---|
| 2,293 ft., 5–4, price | | | $26 00 |
| 5,621 " " " | | | 30 50 |
| 1,921 " 4–4, " | | | 25 00 |
| 2,000 " " " | | | 27 00 |

The car was placed on defendant's siding on the morning of February 11th, and was unloaded by defendant on the 17th. Defendant paid the freight. No settlement having been made for the car, plaintiff sued the defendant in justice's court. There was an appeal to the circuit court, where the cause came on to be tried June 7, 1910, resulting in a verdict for the plaintiff, directed by the court, for $294, which was exclusive of the freight paid, and which allowed the defendant for 20 feet of lumber at the highest price. Defendant moved for a new trial, which was refused.

The testimony of the defendant tended to prove that, because of certain extraordinary conditions attending the delivery of car loads of freight at his yard at about the time when the car in question was delivered, it was inconvenient and deemed to be inexpedient to inspect the lumber as it was taken from the car; that it was unloaded upon the yard, and was not inspected until March 7th, when it was found that only a small portion of the lumber was of the grade of lumber ordered. Being informed of this, the defendant endeavored, he says, to reach plaintiff by telephone at his apartments in Detroit, but was unable to do so, and finally sent him a postal card, and told him to call. He testified:

"I attempted to reach him a number of times, but he was out of town, and did not answer. Then I dropped him this postal card; he came in. I told him I would not accept the lumber. I told him it was not the quality I purchased."

This postal card was received by the plaintiff April 14th, on the same day that it was written, and he called upon the defendant on the 15th of April. April 24th defendant wrote plaintiff a letter, stating that he refused to accept the lumber, because it was not the kind of

168 MICH.—9.

lumber that was sold, and directing him to remove it, pay freight and cost of unloading and storage. Over defendant's objection, the court ruled, as matter of law, that defendant had not inspected and rejected the lumber within a reasonable time. This is assigned as error.

It appeared that the plaintiff and his family resided in apartments in the city of Detroit, and he had his office in his apartment, and a telephone; that he himself was out of the city two-thirds of his time, but was in and out on short trips. It does not appear at what time, or times, defendant sought to reach plaintiff at his apartments by telephone, or how many times he made the attempt; that he left word, or attempted to, with any member of plaintiff's family; or that he used the mail for the purpose of sending notice, until a month and seven days after the lumber was inspected, and almost two months after it was received and unloaded. Counsel agree that defendant was bound to use reasonable diligence to inspect the lumber, and to notify plaintiff that he rejected the car. Defendant testified:

"Our custom usually is to inspect lumber as it was unloaded right from the car. If the car is not up to grade, we notify within a reasonable time, within a few days, within a day or two, if we are able to write them; but if in the city we use the telephone, and call them up. I knew where I could reach him by mail. We did eventually write a card to him when I could not get hold of him."

Usually, what is a reasonable time for inspecting and rejecting goods tendered in performance of a contract of sale is a question for the jury. But delay may be for so long a time that no two opinions upon the subject can be reasonably entertained. Defendant, appreciating, we assume, the necessity therefor, attempts to excuse his delay in making inspection of the lumber, and his further delay in notifying plaintiff that he refused to accept it. But it is clear that at the best his convenience, and not his necessity, occasioned the delay in inspection, and no reasonable effort to notify plaintiff was made until 37 or 38 days after

the inspection, until, in short, the full term given for payment had expired, or was about to expire. We think the ruling made was a proper one.

It is contended that if defendant is held liable to pay for the lumber which was delivered it was for the jury to determine the quantity. Two of defendant's witnesses testified to a scale of the lumber, one making a total of 11,812 feet, and the other a scale of 11,602 feet, while the invoice calls for 11,835 feet. One of these witnesses tallied the lumber as 5-4 and 4-4, and made 4,695 feet of 5-4, while the invoice calls for 3,921 feet. The same witness made 7,117 feet of 5-4, while the invoice calls for 7,914 feet. Some of the 5-4 was billed at a higher price than some of the 4-4; some at a less price than some of the 4-4. Each of these witnesses also testified that he inspected—graded—the lumber, and the respective quantities thereof are stated with reference to the quality of the lumber. One witness found, he said, only 2,747 feet grading B and better out of a total of 11,602 feet, and that there was a difference in price between B and better and common of about $12 a thousand. It is clear that whether the judgment is too large depends on how the lumber shall be graded, because in no other way can it be determined in what grade of lumber, irrespective of its size, the alleged shortage occurred. Defendant did not inform plaintiff of any shortage. He had the invoice which informed him that the car was loaded with two grades of each size of lumber, and that a price had been charged for each grade of each size. Further than this, the defendant, in answer to questions asked by the court, claimed a shortage in the total quantity of only 20 feet, upon which statement the court acted and deducted the price of 20 feet at the highest price. We think no error is made to appear.

The judgment is affirmed.

STEERE, McALVAY, BLAIR, and STONE, JJ., concurred.